IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-04-0150-03 |
| JOSE EFRAIN LINARES-TABORA | § § § | (Civil Action No. H-07-3068) |

# MEMORANDUM AND ORDER

The defendant, Jose Efrain Linares-Tabora, has filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Doc. # 425). He has also submitted a memorandum in support of his claims. (Doc. # 426). The Court has carefully reviewed all pertinent matters in this criminal case. Based on this review, the Court's clear recollection of the relevant proceedings, and the application of governing legal authorities, the Court **denies** the defendant's § 2255 motion and **dismisses** the corresponding civil action (H-07-3068) for the reasons set forth below.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On September 2, 2004, a federal grand jury in this district returned a five-count superseding indictment against Linares-Tabora and six co-defendants, charging them with conspiracy and assorted offenses stemming from an illegal alien smuggling venture in which numerous foreign nationals were also held against their will for ransom. (Doc. # 108). That indictment charged the defendants with conspiracy to conceal, harbor, shield, and transport illegal aliens within the United States for commercial advantage and private financial gain

in violation of 8 U.S.C.§§ 1324(a)(1)(A) and 1324(a)(1)(B) (counts one, two, and three). The indictment further accused the defendants of conspiracy to commit hostage taking by seizing, detaining, and threatening the illegal aliens in order to compel others to pay a sum of money (*i.e.* a ransom) as an explicit and implicit condition for their release in violation of 18 U.S.C. § 1203(a) and 18 U.S.C. § 2 (counts four and five).

On October 25, 2004, a jury found Linares-Tabora and his co-defendants guilty as charged on all of the counts alleged in the superseding indictment. (Doc. # 168). On October 27, 2004, the jury returned a supplemental verdict as to counts one, two, and three of the indictment, finding beyond a reasonable doubt that the offense involved between six and twenty-four aliens, and that a firearm was brandished or otherwise used and possessed during the offense.[1] (Doc. # 177). As to counts four and five, the jury found that the offense involved a demand for ransom and that a dangerous weapon was possessed during the offense. (*See id.*).

After the jury returned its verdict, the Court instructed the Probation Department to prepare a presentence report (a "PSR") for the purpose of determining punishment under the United States Sentencing Guidelines. Because Linares-Tabora was convicted of multiple counts of offenses arising under different statutes, his sentence was determined using the

---

[1] The Court requested supplemental findings by the jury in an abundance of caution in light of the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). Shortly before the defendant's sentencing in this case, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), which held that the Sentencing Guidelines were advisory and that the Court (rather than a jury) was to decide sentencing issues after trial.

provisions found in § 3D1.2 of the United States Sentencing Guidelines Manual. Under § 3D1.2, the offense level for the most serious of the counts among the group, *i.e.*, the count resulting in the highest offense level, determines the relevant Guideline for the base offense level.

The most serious count in Linares-Tabora's case was count four, in which he and the other defendants were convicted of conspiracy to commit hostage taking in violation of 18 U.S.C. § 1203(a). Using the relevant Guideline for hostage-taking offenses, § 2A4.1, the Probation Department determined that Linares-Tabora's base offense level was 32. Because the jury found beyond a reasonable doubt that a ransom demand was made during the commission of the offense, the Probation Department recommended a 6-level increase pursuant to § 2A4.1(b)(1). The Probation Department recommended an additional 2-level increase under § 2A4.1(b)(3) because the jury also found, beyond a reasonable doubt, that a dangerous weapon was used in connection with the offense. These special offense characteristics increased or enhanced Linares-Tabora's base offense level of 32 to a total offense level of 40. Linares-Tabora's had no criminal history points, meaning that he faced a range of imprisonment from anywhere between 292 to 365 months. At a hearing on February 4, 2005, the Court sentenced Linares-Tabora at the lowest end of the advisory Guideline range to serve a total of 292 months in prison, followed by a total of five years on supervised release. (Doc. # 223).

The United States Court of Appeals for the Fifth Circuit affirmed Linares-Tabora's conviction and sentence in a joint appeal. *See United States v. Ibarra-Zelaya*, 465 F.3d 596

(5th Cir. 2006). Linares-Tabora did not appeal further by filing a petition for a writ of certiorari with the United States Supreme Court.

Linares-Tabora now argues that he is entitled to relief from his sentence under 28 U.S.C. § 2255. Liberally construed, Linares-Tabora raises two grounds of relief challenging the sufficiency of the evidence in support of his conviction. In his supporting memorandum, Linares-Tabora raises several arguments that his sentence is excessive, unreasonable, and invalid under the Supreme Court's decision in *United States v. Booker*, 543 U.S. 200 (2005). Linares-Tabora complains further that he was denied effective assistance of counsel at his sentencing because his attorney did not raise a "double jeopardy" objection to a prior conviction that was used to increase his sentence. In addition, Linares-Tabora argues that "supervised release" is not an "authorized sentence" and that, by adding a term of supervised release following the completion of his imprisonment, the Court imposed "double punishment" for the same offense. After reviewing the entire record, the Court concludes that the defendant is not entitled to relief under § 2255 for reasons discussed briefly below.

## II. STANDARD OF REVIEW FOR SECTION 2255 MOTIONS

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). "As a result, review of convictions under section 2255 ordinarily is limited to questions of

constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Id.* Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and not procedurally barred by a failure to raise them on direct appeal).

The defendant proceeds *pro se* in this matter. *Pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519 (1972). At the same time, however, *pro se* litigants are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

### III.   DISCUSSION

#### A.   Claims Challenging the Sufficiency of the Evidence

Linares-Tabora argues that the evidence was insufficient to support his conviction. The record reflects that Linares-Tabora challenged the sufficiency of the evidence on direct

appeal and his claim was rejected by the Fifth Circuit. *See United States v. Ibarra-Zelaya*, 465 F.3d 596, 603-04 (5th Cir. 2006). Because the sufficiency of the evidence was addressed on direct appeal, Linares-Tabora may not re-litigate this issue on collateral review. *See United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986).

Alternatively, the argument that Linares-Tabora makes is without merit. He argues that the evidence was legally insufficient to support his conviction for hostage taking because none of the hostages in his case were "American citizens." Because all of the hostages were aliens, Linares-Tabora reasons that the government failed to prove an element of the offense. In support, Linares-Tabora relies on the decision in *United States v. Yunis*, 924 F.2d 1086 (D.C. Cir. 1991).

Linares-Tabora's reliance on *Yunis* is misplaced. In *Yunis*, the court of appeals held that the Hostage Taking Act, 18 U.S.C. § 1203, provided a basis for federal jurisdiction in the United States over a hijacking incident that occurred in a foreign country because two of the victims involved were United States citizens. *See id*. at 1090. The issue involved in the *Yunis* case was subject matter jurisdiction, and not sufficiency of the evidence.

Linares-Tabora does not dispute that he participated in a conspiracy to take hostages while smuggling illegal aliens into the United States. The argument and authority cited by Linares-Tabora fails to show that the evidence was legally insufficient to support the conviction. *See Ibarra-Zelaya*, 465 F.3d at 603-04. Therefore, he is not entitled to relief under 28 U.S.C. § 2255 on this issue.

**B.     *Booker* Claims**

In his supporting memorandum, Linares-Tabora argues that his sentence is excessive and "unreasonable" under *United States v. Booker*, 543 U.S. 220 (2005). Linares-Tabora did not challenge his sentence on direct appeal. Because he did not raise such a claim on direct appeal, any challenge under *Booker* is barred from consideration on collateral review by the doctrine of procedural default and Linares-Tabora does not allege facts showing that he fits within any recognized exception. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

Alternatively, to the extent that his allegations are not procedurally barred, Linares-Tabora fails to state a valid claim under *Booker*. The record reflects that several of Linares-Tabora's co-defendants did raise a *Booker* claim during their joint appeal, where they challenged the reasonableness of their sentences. These defendants received sentences that were similar or more severe than the one assessed against Linares-Tabora.[2] In affirming these sentences, the Fifth Circuit rejected all of their constitutional claims, finding that the sentences were "reasonable" under *Booker*. *See Ibarra-Zelaya*, 465 F.3d at 608.

After considering all of the evidence at trial, and the jury's findings, the Court concludes that Linares-Tabora fails to demonstrate that his sentence was unreasonable as well. As noted previously, the trial in this case occurred in October of 2004, before the

---

[2] The following defendants challenged their sentences in the joint appeal: Edy Guardado-Mezen, Jose Marlon Ibarra-Zelaya, Elbin Geovany-Mezen, and Marvin Arturo Peralta-Ramirez. As Linares-Tabora observes, Ibarra-Zelaya and Peralta-Ramirez also received a sentence of 292 months' imprisonment. Geovany-Mezen received a sentence of 330 months' imprisonment. Guardado-Mezen received a life sentence in this case.

Supreme Court issued the *Booker* decision on January 12, 2005. In *Booker*, the Supreme Court struck down the mandatory component of the federal sentencing scheme and held that, in order to be constitutional, the Sentencing Guidelines could apply in an advisory capacity only. After *Booker* was decided, the Court held sentencing hearings for Linares-Tabora and his co-defendants in February of 2005. The record shows that the Court confronted the effect of the Supreme Court's decision in *Booker* at the outset of Linares-Tabora's sentencing hearing, in which the Court announced that it intended to apply the Guidelines as "advisory only," and "not binding on [the Court]." (Doc. # 323, *Sentencing Transcript*, at 3).

Any claim by Linares-Tabora that his sentence was decided under a mandatory Guideline scheme in violation of *Booker* is without merit. Likewise, Linares-Tabora does not show that the Guidelines range was calculated incorrectly and he has not alleged specific facts demonstrating that his sentence was otherwise unreasonable under the circumstances. *See Ibarra-Zelaya*, 465 F.3d at 608. Accordingly, Linares-Tabora fails to establish that his sentence was tainted by constitutional error or that he is entitled to any relief under 28 U.S.C. § 2255 on this issue.

### C.    Ineffective Assistance of Counsel

Linares-Tabora complains that he was denied effective assistance of counsel at his sentencing. In particular, Linares-Tabora complains that his attorney failed to raise an objection at sentencing on the grounds that a prior conviction was used to enhance his sentence in violation of the Double Jeopardy Clause. Linares-Tabora appears to complain

further that his attorney should have objected that the term of supervised release was unauthorized "double punishment."

Claims for ineffective assistance of counsel are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 687-88), *cert. denied*, 547 U.S. 1041 (2006). Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Molina-Uribe*, 429 F.3d at 518 (quoting *Strickland*, 466 U.S. at 689). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. To prove prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Harris*, 408 F.3d 186, 189 (5th

Cir.) (quoting *Strickland*, 466 U.S. at 694), *cert. denied*, 546 U.S. 919 (2005). The ineffective-assistance claims raised by Linares-Tabora are discussed separately below.

### 1. Enhancement for a Prior Conviction

Linares-Tabora complains that his trial attorney was ineffective at sentencing for failing to raise a "double jeopardy" objection to the Court's use of a prior conviction to enhance his sentence. This claim is without merit. Although the Double Jeopardy Clause protects against successive prosecution and multiple punishment for the same offense, *Witte v. United States*, 515 U.S. 389, 391 (1995), Linares-Tabora has not been subjected to either. A review of the PSR shows that Linares-Tabora had no prior criminal record and therefore no criminal history points for purposes of determining his sentence under the Guidelines. Therefore, Linares-Tabora fails to show that a prior conviction was used to increase his punishment.

Likewise, it is well established that sentencing enhancements for prior convictions do not implicate the Double Jeopardy Clause. "Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes which are common place in state criminal laws, do not change the penalty imposed for the earlier conviction." *Nichols v. United States*, 511 U.S. 738, 747 (1994). For this reason, the Supreme Court has repeatedly held that such statutes do not violate the Double Jeopardy Clause. *Witte*, 515 U.S. at 400 (citations omitted); *see also Williams v. Oklahoma*, 358 U.S. 576, 585 (1959) (holding that consideration of a prior conviction in sentencing the defendant for a subsequent conviction did not violate double jeopardy

principles because the convictions involved separate offenses, and the sentencing judge was "authorized, if not required, to consider all of the mitigating and aggravating circumstances" in determining the sentence). Accordingly, Linares-Tabora fails to show that his attorney was deficient for failing to raise an objection at sentencing on this issue.

### 2. Supervised Release

Linares-Tabora complains further that his term of supervised release is unauthorized by federal statute and that this portion of his sentence is further unlawful because, as a "separate type of restraint on liberty," it violates double jeopardy by punishing him twice for the same offense. It appears that Linares-Tabora blames his attorney for failing to object to that the term of supervised release constituted "double punishment." For reasons discussed briefly below, however, this claim is also without merit.

In this case, the Court imposed a three-year term of supervised release for Linares-Tabora's conviction on counts one, two, and three, to run concurrently with a five-year term of supervised release for the conviction on counts four and five. (Doc. # 223). Section 3583(a) of United States Code Title 18 authorizes, and in some instances mandates, sentencing courts to order supervised release terms following imprisonment. *See* 18 U.S.C. § 3583(a). The term of supervised release imposed in Linares-Tabora's case was authorized by 18 U.S.C. § 3583(b), which provides for a term of not more than five years where a Class A or Class B felony is involved and a term of not more than three years when a Class C or Class D felony is involved. A variety of conditions of supervised release are authorized by 18 U.S.C. § 3583(d). A prisoner whose sentence includes a term of supervised release "shall

11

be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court." 18 U.S.C. § 3624(e). Linares-Tabora fails to show that his term of supervised release was not authorized or that his attorney was deficient for failing to object on this basis.

Linares-Tabora further fails to show that his term of supervised release constitutes additional punishment in violation of the Double Jeopardy Clause. Because supervised release following imprisonment is part of the original sentence, this claim is without merit. *See United States v. Evans*, 159 F.3d 908, 913 (4th Cir. 1998) ("A term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of the supervised release are all part of the original sentence.") (citation omitted). Absent a showing that Linares-Tabora was punished twice for the same offense, he fails to articulate a valid objection under the Double Jeopardy Clause or to show that his attorney was deficient for failing to raise this issue at the sentencing.

In summary, Linares-Tabora has not shown that his attorney was deficient for failing to make a valid objection at sentencing or that the result of his proceeding would have been any different but for his counsel's performance. Absent a showing of deficient performance and actual prejudice, Linares-Tabora has not established that he was denied his constitutional right to effective assistance of counsel. Accordingly, he is not entitled to relief under 28 U.S.C. § 2255 on this issue.

**IV.     EVIDENTIARY HEARING**

A motion brought under 28 U.S.C. § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief. *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (*per curiam*) (citing *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980)). The record in this case is adequate to dispose fairly of the allegations made by the defendant. A district court need inquire no further on collateral review. Therefore, an evidentiary hearing is not necessary in this instance.

## V.     CERTIFICATE OF APPEALABILITY

The defendant's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, codified as amended at 28 U.S.C. § 2253. Thus, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282

13

(2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After carefully considering the entire record of the criminal proceeding, the Court concludes that jurists of reason would not debate whether the movant has stated a valid claim or whether any procedural ruling in this case was correct. Accordingly, a certificate of appealability will not issue.

## VI.   CONCLUSION AND ORDER

Because the defendant has failed to establish an error of constitutional or jurisdictional magnitude, he is not entitled to relief under 28 U.S.C. § 2255. Based on the foregoing, the Court **ORDERS** as follows:

1. The defendant's motion for leave to proceed *in forma pauperis* (Doc. # 424) is **GRANTED**.

2. The defendant's pending § 2255 motion (Doc. # 425) is **DENIED** and the corresponding civil action (H-07-3068) is **DISMISSED** with prejudice.

3. A certificate of appealability from this decision is **DENIED**.

The Clerk will provide a copy of this order to the parties and will file a copy of this order with the docket in Civil Action No. H-07-3068.

SIGNED at Houston, Texas, on October 22, 2007.

Nancy F. Atlas
United States District Judge